

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
DEC 15 2005

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GF ELECTRIC, INC., | \* | CIV. 05-4059 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION |
| LOCAL UNION 426, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | \* | ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are cross motions for summary judgment (Docs. 18 and 28).

## JURISDICTION

Plaintiff filed this declaratory judgment action in April, 2005. Jurisdiction is proper pursuant to 29 U.S.C. § 185, 28 U.S.C. § 1331 and 28 U.S.C. § 2201. The parties consented to have the Magistrate Judge hear the case (Doc. 17), and Judge Piersol signed an Order of Transfer on August 2, 2005. See Doc. 24. The case is properly pending before this judge, therefore, pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

GF Electric (hereafter "GF")commenced this declaratory judgment action to determine that it is not a party to the 2004-2007 collective bargaining agreement and that it has no obligation to comply with any of the terms of the 2004-2007 Agreement (Doc 1). Local Union 426 (hereafter "Union") answered by admitting virtually all of the allegations in the complaint, but prayed that the complaint should be dismissed because GF is bound by the terms of the 2004-2007 collective

bargaining agreement and because GF has failed to invoke arbitration proceedings through the Council on Industrial Relations, depriving the court of subject matter jurisdiction (Doc. 11).

Trial was scheduled to occur December 13, 2005. Because the material facts are undisputed and are already in the record in connection with the cross motions for summary judgment both parties advised there would be no additional facts to be established at trial in the event both parties' motions for summary judgment were denied. GF moved for summary judgment to declare that it is not bound to the 2004-2007 collective bargaining agreement. The Union did not move for summary judgment on the opposite side of the coin— to declare that GF is bound to the 2004-2007 collective bargaining agreement. Rather, the Union moved for summary judgment to compel GF to arbitrate the issue of its obligation under the 2004-2007 agreement.

## FACTS

GF Electric is a South Dakota corporation with its' principal place of business in South Dakota. GF is an employer and Local Union 426 is a labor organization. GF signed a Letter of Assent by which it became a participant in the Dakotas Chapter National Electrical Contractors Association (NECA). NECA is a multi employer trade association which negotiated the pertinent collective bargaining agreements with the Union. GF's letter of assent became effective January 1, 2000. By the letter of assent GF bound itself to be represented by NECA for the purpose of bargaining with the Union and bound itself to the contracts negotiated between NECA and the Union until terminated by written notification to both NECA and the Union at least 150 days before the anniversary date of the current contract. A successor collective bargaining agreement, negotiated by NECA and the Union, became effective between the parties on June 1, 2002 with an expiration date of May 31, 2004. The first contract and the successor contract both provided for termination

2

upon 90 days written notice before the expiration date of the contract (even though the letter of assent provided for 150 days notice). A sentence within the letter of assent provides "[i]t shall remain in effect until terminated by the undersigned employer giving written notice to the Sioux Falls Division, Dakotas Chapter NECA and to the Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." GF notified NECA and the Union on July 30, 2003 of its intention to withdraw from the collective bargaining agreement. The notice was both more than 90 days and 150 days before the expiration of the contract, May 31, 2004. After GF's notice to terminate, but before the contract expiration date (May 31, 2004) NECA and the Union negotiated a memorandum of understanding which would become the successor collective bargaining agreement to the current 2002-2004 collective bargaining agreement upon the expiration of the current agreement. The memorandum of understanding provided: "...[a]ll the appropriate terms and conditions of this Memorandum of Understanding are effective **February 2, 2004** and subsequently will be incorporated into the Collective Bargaining Agreement between the parties commencing June 1, 2004 to May 31, 2007." (Bold in original) The successor bargaining agreement became effective June 1, 2004 and expires by its terms on May 31, 2007. The Union acknowledges that GF has withdrawn its assent to be represented by NECA in future bargaining after May 31, 2004 with the Union, but asserts that GF is nonetheless bound to the 2004-2007 collective bargaining agreement until its expiration.

GF's notice of termination was delivered by facsimile to the NECA and to the Union. It said:

To Whom it May Concern:
I would like this letter to serve as my notice to terminate my Labor agreement with Sioux Falls Division, Dakotas Chapter, NECA and Local 426 on January 1st, 2004.
Thank you
Gary Fikse

(Doc. 19, ¶12, and Ex. 8). GF, although giving notice of termination to be effective January 1, 2004,

3

believed the collective bargaining agreement had been extended until February 1, 2005 as a result of its having received new Labor Cost Information for the contract period February 2, 2004 through February 1, 2005 (Doc. 19, ¶ 14). GF's lawyer on December 30, 2004 notified the Union that GF would withdraw from the collective bargaining agreement effective February 1, 2005 (Doc. 19, ¶ 17). The Union responded to the letter from GF's lawyer saying, among other matters:

> Under the circumstances, the Union understands the effect, if any, of the July 30, 2003 communication would have been to withdraw GF Electric's authorization for Dakotas Chapter NECA to act as its bargaining agent. Thereafter, GF Electric, Inc. continued to work under and adopted the "Inside Construction Agreement" as an individual employer, and GF Electric continues to be bound by the terms of the contract at least until its expiration on May 31, 2007. (Doc. 19, ¶ 18).

The Union's response also questioned GF about the legal basis for terminating the collective bargaining agreement in mid-term.

## PARTIES' CLAIMS

Plaintiff's claims.   GF Electric asserts it gave timely notice to the NECA Chapter and to the Union of its intent to terminate its participation in the labor agreement. GF explains its conduct (continuing to pay Union wages and benefits) post termination of the contract was the product of a misunderstanding about the effective date of the termination. Because GF received a new Labor Cost Information form for the time from February 2, 2004 to February 1, 2005, GF believed the collective bargaining agreement had been extended to February 1, 2005. GF contends it is not bound by the 2004-2007 agreement because it did not sign another letter of assent after it gave notice of termination on July 30, 2003, because it gave notices of termination both in July, 2003 to be effective January 1, 2004 and in December 2004 to be effective February 1, 2005, and because it did not sign the 2004-2007 collective bargaining agreement. GF also contends its post May 31, 2004 conduct was purely voluntary and gives rise to no obligations. Therefore, GF asserts it is not bound to the

4

2004-2007 collective bargaining agreement.

<u>Defendant's claims.</u>   The Union did not consider the facsimile to be an effective notice of termination for two reasons. First, the notice was not in letter form signed by the president of the company. Second, the dates of GF's purported termination of the contract (January 1, 2004 and February 1, 2005) were earlier than the contract expiration dates (May 31, 2004 and May 31, 2007). In February 2004 NECA and the Union negotiated a Memorandum of Understanding which extended the 2002-2004 contract into a successor collective bargaining agreement to run from June 1, 2004 through May 31, 2007. The Union contends GF is obliged to submit its attempts to terminate to the Council on Industrial Relations (CIR) for resolution. The Union asserts, therefore, the court is without subject matter jurisdiction because this is a matter which the parties agreed to arbitrate under section 1.02 or alternatively under sections 1.06-1.09 of the 2002-2004 collective bargaining agreement.

## ISSUES

The issues to be decided are:

(1) Whether the collective bargaining agreement expired on its anniversary date May 31, 2004 as a result of GF's July 30, 2003 notice of termination.

(2) Whether the collective bargaining agreement expired February 1, 2005 as a result of counsel's December, 2004 notice of termination.

(3) Whether GF is bound to the successor collective bargaining agreement for the period June 1, 2004 to May 31, 2007 negotiated by NECA and the Union during February of 2004.

Specifically, the answers to all of these questions can be determined by answering the following question: What were the effects of the notices of termination given by the president of GF on July 30, 2003 and given by counsel for GF in December 2004?

Having identified the issue to be decided, the threshold question is whether the issue is one to be decided by the court or whether the issue is one to be decided by arbitration.

## ANALYSIS

A. <u>Summary judgment standard.</u>

When the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue about any material fact and that the moving part is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.P. 56(c); <u>Jankovitz v. Des Moines Independent Community School Dist.</u>, 421 F.3d 649, 652-653 (8th Cir. 2001). " Where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate. <u>Id.</u>"

B. <u>Whether the issues are for the court or are for arbitration.</u>

Neither GF nor the Union has submitted the matter to the Council on Industrial Relations (CIR). Rather, the Union has asserted the federal court lacks subject matter jurisdiction (because the issues are for arbitration) and has moved for summary judgment compelling GF to arbitrate the question of GF's obligation under the 2004-2007 collective bargaining agreement.

1. Legal Principles.

"It is a well-settled principle of labor law that the issues of contract termination or expiration are subject to judicial resolution unless the parties agree to submit them to arbitration." <u>Trinidad Corporation v. National Maritime Union of America</u>, 81 F.3d 769,772 (8th Cir. 1996) (internal citation omitted). "Where the collective bargaining agreement contains an arbitration clause, there is a presumption in favor of arbitrability. Under the presumption, arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

6

interpretation that covers the asserted dispute.'" Local Union No. 884 United Rubber, Cork, Linoleum, and Plastic Workers of America v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1352-1353 (8th Cir.1995) (internal citations omitted). ". . .[W]hether the parties have a valid arbitration agreement that binds them is a question for judicial determination. Likewise, any question as to whether a valid arbitration applies to the subject matter at hand is a question for a court to answer." International Association of Bridge, Structural, Ornamental, and Ironworkers, Shopman's Local 493 v. Efco Corporation and Construction Products, Inc.,359 F.3d 954, 956 (8th Cir. 2004) (internal citations omitted). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Local 493 at 956.

2. The contract language of Section 1.02 of the 2002-2004 collective bargaining agreement.

Subpart (a) provides notice of change or termination must occur in writing 90 days before the expiration date of the agreement.

Subpart (b) provides notices for changes must describe the nature of the proposed change in the notice or no later than the opening day of the first negotiating meeting.

Subpart (c) provides the existing provisions of the agreement remain in full force and effect until a conclusion is reached regarding the proposed changes.

Subpart (d) provides unresolved issues arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th day of the month before the next regular meeting of the Council on Industrial Relations may be submitted to the Council for adjudication.

Subpart (e) provides negotiations should continue during the time when the dispute is pending before the Council.

Subpart (f) provides notices of <u>termination</u> are to be handled in the same manner as a proposed <u>change</u>.

3. The Union's claims to support arbitration.

The Union cites four cases to support its argument that GF's attempt to terminate the agreement is for the CIR to resolve under Section 1.02. <u>Local Union No. 66 IBEW v. Stokes Electrical Service, Inc</u>, 225 F.3d 415 (4th Cir. 2000); <u>Local Union 637 v. Davis H. Elliot Co., Inc.</u>, 13 F.3d 129 (4th Cir. 1993); <u>Beach Air Conditioning and Heating, Inc. v. Sheet Metal Workers Int'l. Ass'n, Local Union No. 102</u>, 55 F.3d 474 (9th Cir. 1994); and <u>Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.</u>, 877 F.2d 547 (7th Cir. 1989). The Union argues in the alternative that the grievance dispute procedures of Section 1.06 through 1.09 require this termination dispute to be resolved by the CIR.

4. GF's claims to defeat arbitration.

GF argues the Union is "simply wrong" that the matter of termination is for the CIR to resolve. GF argues three of the four cases cited by the Union "stand for the unremarkable proposition" that arbitration is appropriate when matters subject to arbitration are timely and properly raised. GF also argues the grievance dispute resolution procedures described in Sections 1.06 through 1.09 do not apply. GF relies on <u>Local Union 637 v. Davis H. Elliot Co., Inc.</u>, 13 F.3d 129 (4th Cir. 1993), which the Union also relies upon.

8

5. Analysis regarding arbitration.

There is one Eighth Circuit case with a substantially similar fact pattern to the fact pattern in this case, but there is one important distinguishing feature about it. <u>Local Union 257, International Brotherhood of Electrical Workers, AFL-CIO v Sebastian Electric, et al.</u>, 121 F.3d 1180 (8th Cir. 1997). The union invoked arbitration before the collective bargaining agreement expired in that case, which distinguishes it from this case where neither the union nor the employer has invoked arbitration either before or after the agreement expired. As a result there were unresolved issues in negotiation (the employer refused to negotiate) in <u>Sebastian</u>. By contrast the very question to be decided here about arbitration is whether there are unresolved issues which can be arbitrated. <u>Sebastian</u> is useful to decide the merits of the this case, but less useful than the <u>Davis H. Elliot</u> case to decide whether the merits of this case should be decided by the court or by the arbitrator. The <u>Davis H. Elliot</u> case from the Fourth Circuit is a substantially identical fact pattern and addressed the same legal question about arbitration as presented here. The Fourth Circuit applied pertinent legal principles consistent with those pronounced by the Eighth Circuit. The Fourth Circuit described the "deceptively simple question" to be whether the court or the arbitrator should decide whether the collective bargaining agreement entitles the Union to invoke the interest arbitration clause. The Eighth Circuit in <u>Sebastian</u> said the arbitration clause was binding and enforceable "<u>at the time</u> [the union] invoked its rights under the interest arbitration clause. . ." <u>Sebastian</u> at 1186, (Emphasis added). The very question to be decided here is whether the failure of the union to invoke arbitration during the time when the contract containing the arbitration clause was in effect renders arbitration unavailable because there are no unresolved issues to arbitrate. The 2004-2007 successor contract by law does not include the arbitration clause as to GF. <u>Sebastian</u> at 1182, fn. 5, citing <u>Sheet Metal Workers Intern. Ass'n, Local 14 v. Aldrich Air Conditioning, Inc.</u>,

9

717 F.2d 456, 458-459.

Both in the Davis H. Elliot case and in this case the employer gave timely notice to terminate the contract and the Union did not timely open the negotiation process. In both the Fourth and Eighth Circuits it is for the court as a matter of contract interpretation to decide whether the parties have agreed to submit a case to arbitration. Both in the Davis H. Elliot case and in this case the same language of Section 1.02 was interpreted. In both the Fourth and Eighth Circuits doubts about the scope of a broad arbitration provision are to be resolved in favor of arbitration. The Fourth Circuit instructs in Davis H. Elliot about a question not yet addressed by the Eighth Circuit.

> . . .[A]n interest arbitration provision which addresses limited questions about the existence of the agreement itself or its terms should not be interpreted with the same deference to arbitration. Rather, traditional principles of contract interpretation should apply to the interpretation of such interest arbitration clauses, since the issue of whether parties have agreed to arbitrate remains a judicial one.

Davis H. Elliot at 133. The arbitration clause, Section 1.02, ". . .does not refer all contractual disputes to arbitration, but only those changes proposed before 90 days of the expiration date and on which no agreement through negotiation has been reached." Davis H. Elliot at 134. In both Davis H. Elliot and in this case there were no "unresolved issues." "Issues that fail to qualify as 'unresolved issues in negotiations' fall beyond the jurisdiction of the CIR by the terms of the collective bargaining agreement." Id. In both Davis H. Elliot and in this case,

> [t]he failure of [the Union] to submit questions for negotiation as timely required and to engage in the negotiations as provided by the contract, are not procedural conditions *to the arbitration*, but are substantive contract conditions to the establishment of 'unresolved issues in negotiations.' Only by establishing such unresolved issues as provided by contract, could there be a subject matter to arbitrate.

Id.(italics in original). Davis H. Elliot instructs the grievance arbitration clauses (Sections 1.06-1.09) are not applicable. Davis H. Elliot at 133. Because both in Davis H. Elliot and in this case there are

no unresolved issues which exist to arbitrate and because the grievance arbitration clause is not applicable, Davis H. Elliot instructs it is for the court to decide the question of GF's obligation under the 2004-2007 contract.[1]

This conclusion, however, does not resolve the question of GF's obligation under the 2004-2007 contract.[2] This conclusion is merely that the matter of interpreting the collective bargaining agreement in this instance is for the court. Hence, this court does have subject matter jurisdiction over the issues raised in GF's complaint.

The other cases relied upon by the Union are distinguishable:

Stokes is distinguishable because there the Union timely submitted the unresolved issue of termination to arbitration. That did not occur here. In that circumstance the employer was bound to arbitrate the matter of termination. Stokes itself distinguishes Baylor and "the *Sheet Metal Workers* cases" because the unions had lost their 8(f) status, and the employers had no statutory duty to arbitrate. ("*Sheet Metal Workers* cases" refers to Baylor and others. Stokes at 422-423.) In Stokes the court found a contractual duty to arbitrate. Stokes cited Davis H. Elliot with approval. Stokes at 419.

Beach is distinguishable because the Union requested the employer to engage in negotiations for a new contract. The employer refused. The refusal to negotiate is itself an unresolved dispute which can be submitted to arbitration. Here there was no request by the Union to the employer to engage in negotiations for a new contract. (The parties apparently believed there was a new

---

[1] There were negotiations between NECA and the Union in February 2004. Those negotiations did not address GF's notice of termination. Those negotiations did not leave any issue "unresolved."

[2] As apparent later in this opinion, Sebastian is most useful to answer this question.

11

contract—GF believed it was to terminate February 1, 2005, and the Union believed it was to terminate May 31, 2007. The parties continued to conduct themselves after the scheduled contract expiration date as though the contract had been extended.)

Baylor is distinguishable because there the arbitration clause was broader—the parties agreed to arbitrate "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement." Baylor at 551. Here the arbitration agreement relates to a narrower matter— "unresolved issues" in the negotiation. Here there were no unresolved issues. (There Deklewa did not control the analysis of the interest arbitration clause. Baylor at 554. Later in this opinion Deklewa is relied upon to analyze GF's ability to unilaterally repudiate the collective bargaining agreement before the expiration of the agreement— a different matter from interpreting a broad interest arbitration clause.)

C. The notices to terminate were effective to terminate the collective bargaining agreement upon the expiration of the 2004-2007 contract.

The July 30, 2003 notice to terminate was timely. That it was by facsimile and not signed by hand does not defeat its effectiveness. The facsimile provided written notice more than 90 days before the contract expired (as well as more than 150 days before the contract expired as per the letter of assent). Timely written notice is the only requirement described in the contract. The contract does not say notice must be in letter form and signed by hand. The contract does not say the notice cannot be by facsimile. Notice need only be adequate. International Brotherhood of Electrical Workers, Local 26 v. Advin Electric, Inc., 98 F.3d 161,165 (4th Cir. 1996). Notwithstanding the Union's argument to the contrary, the notice was effective.

The problem with the July 30, 2003 notice, however, is that it designated a date for

12

termination earlier than the contract expiration date. The contract termination date was May 31, 2004. The date GF designated for termination in the notice was January 1, 2004. Some background discussion is necessary before continuing with the discussion about the termination date.

There is a difference between a 29 U.S.C. § 159(a) collective bargaining agreement and a 29 U.S.C. § 158(f) collective bargaining agreement. Neither party here has addressed the issue, perhaps because it is clear this construction industry, multi employer trade association, pre-hire agreement is an 8(f) agreement. "Neither employers nor unions who are party to 8(f) agreements will be free unilaterally to repudiate such agreements." John Deklewa & Sons, Inc., 282 N.L.R.B. 1375, (1987), enf'd sub nom., International Ass'n of Bridge, Structural and Ornamental Iron Workers v. NLRB and Deklewa, 843 F.2d 770, 779 (3rd Cir. 1988). This rule announced in Deklewa has been adopted and applies in the Eighth Circuit. National Relations Board v. W.L. Miller Co., 871 F.2d 745, 747 (8th Cir. 1989). The conclusion, therefore, is the termination date of January 1, 2004 cannot be the effective date for terminating the contract. The contract expiration date is May 31, 2004.

What happens if the notice to terminate is defective because it specifies the wrong date for termination? The inquiry is not at what date the contract is terminated, but whether the notice of cancellation is effective at all. Shain v. Washington Nat'l Ins. Co., 308 F.2d 611, 614 (8th Cir. 1962). "And it is the general rule that where a contract, whether it be one for employment or for insurance or of a different kind, requires written notice of cancellation upon a stated time, a notice failing to meet the time requirement, but otherwise appropriate, is nonetheless effective upon the lapse of the time required by the contract." Id. GF's notice was effective, therefore, as notice to withdraw from representation by NECA (as distinguished from terminating the collecting bargaining agreement with the Union as is explained below) effective upon the expiration of the collective

bargaining agreement, May 31, 2004.

Counsel's notice to terminate, given in December, 2004, intended to be effective February 1, 2005, is rendered academic as is explained below. Because GF is bound to the 2004-2007 collective bargaining agreement as is explained below, the unilateral notices to terminate it cannot be effective until the expiration of the 2004-2007 contract as was explained above (neither party can unilaterally repudiate the agreement during the term of the agreement; an adequate notice to terminate as of the wrong date is effective according to the terms stated in the contract about cancellation—in this case upon expiration of the existing contract). At most, the December 2004 notice is a second notice to terminate the successor contract (2004-2007) upon its expiration, the same as was accomplished by the July 30, 2003 notice of termination (which withdrew NECA's authority to bargain with the Union on behalf of GF effective by law at the end of the 2002-2004 agreement, and the elimination by law of the interest arbitration clause from the successor contract).

D. The 2004-2007 agreement was negotiated while NECA was authorized by GF's letter of assent to negotiate with the Union.

There is an important distinction between the collective bargaining agreement and the letter of assent. The letter of assent authorized NECA to negotiate with the Union on GF's behalf, and on behalf of all the electrical contractors who had signed similar letters of assent. The result of the negotiation between NECA and the Union is the collective bargaining agreement. The then current collective bargaining agreement established May 31, 2004 as the expiration date of the collective bargaining agreement. As was explained above, neither an employer nor the Union can unilaterally repudiate the collective bargaining agreement before its expiration date. What about terminating the authority of NECA to negotiate on behalf of GF? Can GF terminate the authority of NECA to

14

negotiate on behalf of GF before the collective bargaining agreement expires? In a word, no. The letter of assent includes an evergreen clause: "[i]t shall remain in effect until terminated by the undersigned employer giving written notice to the Sioux Falls Division, Dakotas Chapter NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." The identical language was construed by the Eighth Circuit (pre-Deklewa) as an evergreen clause which creates an on-going delegation which ends only on formal termination. Local 257, International Brotherhood of Electrical Workers, AFL-CIO v. Grimm, 786 F.2d 342, 345, (8th Cir. 1986). While Grimm does not expressly say NECA's authority to negotiate for the employer cannot be withdrawn earlier than the expiration date of the collective bargaining agreement, read together, the language in the letter of assent, Grimm, and Miller(Deklewa) compel the conclusion reached by the Eighth Circuit in Sebastian. Local Union 257, International Brotherhood of Electrical Worker, AFL-CIO v Sebastian Electric, et al., 121 F.3d 1180 (8th Cir. 1997). In Sebastian the employer gave timely notice to terminate, yet the Eighth Circuit quoted with approval the district court's reference to the illegal termination of the collective bargaining agreement. Sebastian at 1185. The arbitration clause was the dispute there. The employer suggested the arbitration clause in the collective bargaining agreement did not survive the employer's termination of the letter of assent. The chronology there was (1) the employers gave timely notice of intent to terminate the letters of assent for NECA to bargain for them; (2) the union then gave notice it intended to negotiate a successor agreement with each employer; (3) the employers refused to negotiate successor agreements; (4) the union notified each employer it intended to submit the issue concerning successor collective bargaining agreements to the CIR, pursuant to the interest arbitration clause in the existing collective bargaining agreement; (5) the Union submitted the matter to the CIR which directed the employers to sign the successor collective

15

bargaining agreement for the successor time period; (6) the district court granted summary judgment against the employers and enforced the arbitration award; (7) the Eighth Circuit affirmed saying "[T]he letters of assent were in effect at the time St. Louis-NECA entered into the 1992-1994 . . . agreements, and defendants therefore became parties to and bound by the terms of those agreements." Sebastian at 1184. The court reasoned the Union submitted the dispute to arbitration while the existing collective bargaining agreement was still in effect. Likewise in this case, while the collective bargaining agreement and the letter of assent were still in effect, NECA and the Union in February 2004 negotiated a successor contract for the 2004-2007 time period. Even though NECA was no longer authorized to negotiate for GF after May 31, 2004 as a result of the timely July 30, 2003 notice of termination, NECA was still authorized to negotiate for GF before May 31, 2004. NECA did. NECA negotiated a successor collective bargaining agreement with the Union on behalf of GF for the time period from June 1, 2004 to May 31, 2007— evidenced by the Memorandum of Understanding effective February 2, 2004. GF is bound to that collective bargaining agreement with the Union until it expires in 2007. After May 31, 2004, NECA is retroactively no longer authorized to bargain for GF Electric.

## CONCLUSION

There is federal court jurisdiction because the questions to be decided are for the court to decide, not the Council on Industrial Relations. During the time when NECA was authorized to negotiate on behalf of GF, NECA and the Union negotiated a successor contract to be effective from June 1, 2004 to May 31, 2007. GF is bound to the 2004-2007 collective bargaining agreement which NECA negotiated on GF's behalf. Because GF is not entitled to summary judgment declaring that it is not bound to the 2004-2007 agreement its' motion is DENIED (Doc. 18). Because the Union

is not entitled to summary judgment compelling GF to arbitrate the question of GF's obligation to the 2004-2007 agreement the Union's motion for summary judgment is also DENIED (Doc. 28).

Because there are no disputes about material facts and because, as a matter of law, (1) GF is obligated to the 2004-2007 collective bargaining agreement, (2) the successor 2004-2007 collective bargaining agreement does not include an interest arbitration clause, and (3) NECA is not now and has not been authorized to bargain with the Union on behalf of GF since May 31, 2004, Judgment will be entered declaring that GF Electric is bound to the successor collective bargaining agreement for the time from June 1, 2004 through May 31, 2007, without an interest arbitration clause and declaring that since May 31, 2004, the National Electrical Contractors Association has been and is no longer authorized to bargain with Local Union 426 on behalf of GF Electric.

Because both motions for summary judgment have been denied, neither party has requested a jury trial, and both parties have advised that all of the evidence is in the record as a result of the summary judgment motions, pursuant to Federal Rule of Civil Procedure 52(a) the findings of fact and conclusions of law are as stated in this opinion.

Dated this 15 day of December, 2005.

BY THE COURT:

John Simko
John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By Shelly Margulies Deputy

17