UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**
FEB 17 2006


CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GF ELECTRIC, INC., | \* | CIV. 05-4059 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION |
| LOCAL UNION 426, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | \* | AND ORDER ON PLAINTIFF'S MOTION TO ALTER OR AMEND |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Plaintiff's Motion to Alter or Amend Judgment (Doc. 38). Plaintiff contends there has been a manifest error of law. GF Electric asserts its notice of withdrawal of NECA's authority to bargain with Local 426 prevented NECA from negotiating a successor collective bargaining agreement to which GF is bound. GF asserts, therefore, the judgment should be altered or amended. Local Union 426 resists, urging the post May 31, 2004 conduct of GF evidences an equivocal attempt to terminate and that reliance on Grimm and Sebastian is correct. Local 257, IBEW v. Grimm, 786 F.2d 342 (8th Cir. 1986); and Local 257, IBEW v. Sebastian Electric, 121 F.3d 1180 (8th Cir. 1997).

## ANALYSIS

Standard of Review.  GF's motion is made pursuant to Federal Rule of Civil Procedure 59(e), and alternatively pursuant to Federal Rule Civil Procedure 60(b). A motion under 59(e) to alter or amend a judgment serves the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of

the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998). "Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances. . . . Rule 60(b) is a motion grounded in equity and exists to prevent the judgment from becoming a vehicle of injustice. The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005) (quotation marks and citations omitted). The only subsections of Rule 60 which appear applicable are (b)(1)— mistake, and (b)(6)— "any other reason justifying relief." Under (b)(6) relief can be granted "only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." Harley at 871 (internal citation omitted).

Claims of the Parties.

A.   GF ELECTRIC

GF contends the judgment should be altered or amended pursuant to Fed.R.Civ.P. 59(e) to correct a manifest error of law. In the alternative GF seeks relief under Federal Rule of Civil Procedure 60(b). GF maintains NECA could no longer bargain immediately after GF gave notice of withdrawal of NECA'S authority to bargain with Local 426. GF contends it was a manifest error of law, therefore, to conclude the February 2, 2004, memorandum of understanding was binding on GF Electric. GF suggests there are a number of cases directly on point which compel the conclusion an employer is free to withdraw from a multi-employer association for any reason prior to the date set for renegotiation of an existing contract, provided adequate written notice is given. N.L.R.B. v. Hayden Electric, Inc., 693 F.2d 1358, 1363 (11th Cir. 1982) citing Retail Associates, Inc., 120 NLRB 388 (N.L.R.B. 1958). GF maintains there is a more recent case with nearly identical facts which further illustrates the point. Electrical Workers IBEW Local 952 and D & R Electric, Inc., 275

NLRB 319 (N.L.R.B. 1985). GF asserts the Fourth Circuit reached the same conclusion. IBEW Local 26 v. AdVin Electric, Inc., 98 F.3d 161 (4th Cir. 1996). GF points out the First Circuit also decided an employer was not bound by a NECA negotiated contract extension after timely notice of withdrawal. Haas Electric, Inc.v. N.L.R.B., 299 F.3d 23 (1st Cir. 2002). GF contends this court's decision erroneously relied upon the Eighth Circuit's Sebastian and Grimm decisions. Local 257, IBEW v. Sebastian Electric, 121 F.3d 1180 (8th Cir. 1997); Local 257, IBEW v. Grimm, 786 F.2d 342 (8th Cir. 1986). Rather, the Eighth Circuit case of Action Electric, Inc. v. Local 292, IBEW, 856 F.2d 1062 (8th Cir. 1988) is controlling. The Action Electric rule is that unannounced, premature negotiations between the employer bargaining association and the union could not nullify an employer's right to terminate the letter of assent when there is compliance with the agreed upon withdrawal procedure. GF distinguishes Sebastian because the local union there timely invoked the interest arbitration provision of the existing collective bargaining agreement. GF distinguishes Grimm because Grimm Electric did not give timely notice of termination, so the Eighth Circuit was not called upon to determine the effective date of termination.

GF did not mention two important cases relied upon by the court: Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. N.L.R.B. (Deklewa), 843 F.2d 770 (3rd Cir. 1988) cert. den. 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) and N.L.R.B. v. W.L. Miller Co., 871 F.2d 745 (8th Cir. 1989) ("Miller I").[1]

---

[1] Miller I spawned several other "Miller" cases. Miller I adopted the Third Circuit's Deklewa decision. Three descendants of Miller I address the issue of back pay which needed to be resolved after Miller I was decided. One was a decision by an administrative law judge. Miller v. Eastern Missouri Laborers' Dist. Council 1991 WL 1283193 (NLRB Div. of Judges). The next case was a decision by the NLRB. Miller and Eastern Missouri Laborers' Dist. Council, 306 NLRB 936, (N.L.R.B. 1992). Miller II was another decision by the Eighth Circuit. Miller v. N.L.R.B., 988 F.2d 834 (8th Cir. 1993) ("Miller II"). Miller II denied enforcement of the back pay issue which the administrative law judge and the NLRB had enforced. It is beyond

B.  LOCAL 426

Local 426 opposes GF's motion. Local 426 maintains factual differences distinguish the cases cited by GF. Local 426 argues GF's analysis ignores GF's conduct after the expiration of the existing collective bargaining agreement. Local 426 suggests GF accepted the benefits of the contract negotiated by NECA. Local 426 contends GF cannot both simultaneously accept the benefits of the collective bargaining agreement and declare it was not bound by it. Local 426 distinguishes all the cases mentioned by GF because none of the employers in those cases honored the terms of any contract extension negotiated by or on its behalf after the employers gave notice of withdrawal. Local 426 maintains Sebastian and Grimm are appropriate cases on which to rely. Local 257, IBEW v. Sebastian Electric, 121 F.3d 1180 (8th Cir. 1997); Local 257, IBEW v. Grimm, 786 F.2d 342 (8th Cir. 1986). In Sebastian the letters of assent remained effective until the expiration of the collective bargaining agreement. Grimm teaches that GF's post notice of termination conduct rendered its notice of termination equivocal.

Local 426 also did not mention Deklewa and Miller. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. N.L.R.B. (Deklewa), 843 F.2d 770 (3rd Cir. 1988) cert. den. 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) and N.L.R.B. v. W.L. Miller Co., 871 F.2d 745 (8th Cir. 1989).

Issue.

The issue is whether GF's notice of termination ended NECA's authority to negotiate on July

---

question that the Deklewa rule adopted by the Eighth Circuit in Miller I is the law of the Eighth Circuit. McKenzie Engineering Co. v. N.L.R.B., 303 F.3d 902, 907, f.n. 2 (8th Cir. 2002).

4

30, 2003, or whether NECA's power to negotiate for GF continued until the expiration of the collective bargaining agreement on May 31, 2004. If NECA immediately lost its power to negotiate for GF, then GF is not obligated to the successor contract from June 1, 2004 through May 31, 2007. If NECA's power to negotiate for GF did not end until May 31, 2004, then GF is bound to the successor contract which NECA and Local 426 negotiated and reduced to a memorandum of understanding effective February 2, 2004. This deceptively simple question requires a complex analysis.

Discussion.

The NLRB cases cited by GF illustrate the rules which existed before the NLRB decided Deklewa. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. N.L.R.B. (Deklewa), 843 F.2d 770 (3rd Cir. 1988)cert. den. 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988). After the NLRB's Deklewa decision was affirmed by the Third Circuit in 1988, the Eighth Circuit in 1989 adopted the Deklewa rule. N.L.R.B. v. W.L. Miller Co., 871 F.2d 745 (8th Cir. 1989). "We believe that the Third Circuit's reasoning concerning the propriety of the *Deklewa* rule is correct, and we decline the invitation to examine it anew. . . . Suffice it to say that we agree with the Third Circuit in finding the *Deklewa* rule a rational and well reasoned interpretation of section 8(f) that will further Congressional objectives. We defer to the Board's judgment . . . and apply the *Deklewa* rule in this Circuit." Miller at 748 (internal citations omitted). Among other matters, Deklewa establishes that during the term of a collective bargaining agreement the parties to an 8(f) agreement[2] cannot unilaterally repudiate the agreement. That is the fundamental principle on which this case turns, together with the termination language of the letter of assent.

That the Fourth and Eleventh Circuits may have a different rule is not controlling. The

---

[2]It is undisputed this is an 8(f) collective bargaining agreement.

5

Eighth Circuit has spoken. The Eighth Circuit said this is a "new rule." Miller, 871 F.2d at 746. The Eighth Circuit specifically rejected the argument that an employer can repudiate an 8(f) agreement at will. Miller at 746. The new rule was (and is) ". . .that section 8(f) agreements are enforceable during the life of the agreement, but impose no continuing obligation to bargain following the termination of that agreement." Miller at 746.

Plaintiff contends Action Electric is the controlling Eighth Circuit case. Action Electric, Inc. v. Local 292, IBEW, 856 F.2d 1062 (8th Cir. 1988). Action Electric does not mention Deklewa. Action Electric was decided September 7, 1988. Deklewa was decided by the Third Circuit five months earlier on April 12, 1988. Action Electric stands for the proposition that an employer cannot withdraw from a multi-employer bargaining arrangement after negotiations have begun without the consent of the union or "unusual circumstances." Action at 1064. GF argues that its notice of withdrawal of authority for NECA to negotiate was given before negotiations began with the union. GF contends its' notice to terminate the letter of assent was effective and NECA was not, therefore, authorized to bargain with the union on GF's behalf. The argument might be persuasive under Action Electric, but not under Miller. N.L.R.B. v. W.L. Miller Co., 871 F.2d 745 (8th Cir. 1989). Action Electric was the law in the Eighth Circuit until Miller was decided on March 29, 1989. Miller, not Action Electric, is now the controlling law in the Eighth Circuit on the issue pertinent to this case.

The letter of assent includes a clause which says "[i]t shall remain in effect until terminated by the undersigned employer giving written notice to the Sioux Falls Division, Dakotas Chapter NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." The current anniversary date of the applicable approved labor agreement was May 31, 2004. In other words, the letter of assent required GF to give timely notice if GF no longer desired NECA to be authorized to negotiate on its behalf

6

after May 31, 2004, but the letter of assent allowed NECA to negotiate until that date even if timely notice was given to withdraw authority to bargain.

The law in the Fourth Circuit supports GF's position. Industrial TurnAround Corp. v. N.L.R.B., 115 F.3d 248 (4th Cir. 1997). The Fourth Circuit, however, has refused to follow Deklewa. Deklewa is the law in the Eighth Circuit. The Fourth Circuit has said even an untimely notice of termination of a letter of assent is effective immediately. Industrial TurnAround at 255.

The issue then, is the effect in the Eighth Circuit of a timely notice of termination of a letter of assent during the life of a binding collective bargaining agreement under the Deklewa decision. The Fourth Circuit's view about immediate termination of a letter of assent is not controlling because (1) the Fourth Circuit has rejected Deklewa, (2) the Eighth Circuit has adopted Deklewa, (3) Deklewa was originally decided by the NLRB, and (4) the NLRB says a letter of assent with identical termination language to that in this case continues in force, even after timely notice to terminate, until the anniversary date of the collective bargaining agreement. N.L.R.B. v. Industrial TurnAround Corp., 321 NLRB 181, 183 at f.n. 7[3], 184 and f.n. 6 apx p. 190[4] (1996) review denied in part, enforcement denied in part, 115 F.3d 248 (4th Cir. 1997).[5] The NLRB adopted the ALJ's decision, in which the ALJ said "By letter dated *May 6, 1993* ITAC . . . submitted notice of its intention . . .to terminate the 1990 Letter of Assent. I find that ITAC ceased to be bound by the requirements of the Letter of Assent as of *August 31, 1994*." (emphasis added). In that case, August

---

[3]Reference is made to 181 and 183 f.n. 7 which is the NLRB decision adopting the decision of Administrative Law Judge Steven M. Charno.

[4]Reference is made to p. 184 and f.n. 6, which is the ALJ's decision appended to the NLRB's decision. The ALJ decision appears on higher numbered pages with its own set of footnotes. That explains why "f.n. 6" appears on a higher numbered page than "f.n. 7" which is the NLRB'S footnote.

[5]The termination language of the letter of assent is not quoted in the NLRB decision, but it is quoted by the Fourth Circuit when it considered the same case. Industrial TurnAround 115 F.3d at 250.

31, 1994 was the date the existing collective bargaining agreement ended according to its terms. The NLRB observed the employer was obligated by its Letter of Assent to adhere to the terms of any collective bargaining agreement negotiated by its agent NECA, and NECA negotiated a successor agreement to be effective upon expiration of the existing agreement. Industrial TurnAround apx p. 190, f.n. 5.

In the instant case NECA negotiated a memorandum of understanding with Local 426 which became effective on February 2, 2004. The memorandum of understanding provided for a successor agreement (Agreement II) to take effect after expiration of the existing agreement (Agreement I) for the time from June 1, 2004 through May 31, 2007. GF is bound by Agreement II because NECA negotiated for GF while NECA was authorized to negotiate with Local 426 on behalf of GF— both the negotiations and the mutual consent to Agreement II occurred before May 31, 2004. Both the letter of assent and the collective bargaining agreement were binding on the parties until May 31, 2004. Although bound by Agreement II until 2007, GF cannot be bound by an unwanted labor agreement beyond the expiration of Agreement II because (1) NECA was no longer authorized to negotiate for GF after May 31, 2004 (as a result of GF's withdrawal of the letter of assent) and (2) the interest arbitration clause by law is not a part of Agreement II. Local 257, IBEW v. Sebastian Electric, 121 F.3d 1180, 1182, f.n. 5 (8th Cir. 1997) citing Sheet Metal Workers Int'L Ass'n, Local 14 v. Aldrich Air Conditioning, Inc., 717 F.2d 456, 458-459 (8th Cir. 1983).

Grimm is a controlling case because it holds a labor agreement is binding until it is formally terminated. Grimm, 786 F.2d 342. GF gave timely notice of termination, but the collective bargaining agreement and the letter of assent were not "formally terminated" until May 31, 2004 (under Miller/Deklewa). Sebastian is a controlling case because it illustrates that a collective

bargaining agreement is binding until it expires by its terms despite a timely notice of termination. Sebastian, 121 F.3d 1180.

GF cites the following cases:

1. Retail Associates, Inc., 120 NLRB 388 (N.L.R.B. 1958);

2. N.L.R.B. v. Hayden Electric, Inc., 693 F.2d 1358 (11th Cir. 1982);

3. IBEW, Local 26 v. AdVin Electric, Inc., 98 F.3d 161 (4th Cir. 1996);

4. Haas Electric, Inc. v. N.L.R.B., 299 F.3d 23 (1st Cir. 2002);

5. Electrical Workers IBEW Local 952 (D & R Elec.), 275 NLRB 319 (N.L.R.B. 1985);

6. Action Electric, Inc.v. Local 292, IBEW, 856 F.2d 1062 (8th Cir. 1988).

The reasons these cases are not controlling are now explained.

**1 and 2.** Retail Associates established the rules followed by the NLRB before the NLRB adopted Deklewa. Retail Associates,120 NLRB 388 (1958). Hayden is an 1982 Eleventh Circuit decision, i.e., it pre-dates Deklewa. N.L.R.B. v. Hayden Electric, Inc., 693 F.2d 1358 (11th Cir. 1982). The Eleventh Circuit in 1997 rejected Deklewa. Local Union 48 Sheet Metal Workers v S.L. Pappas & Co., Inc. 106 F.3d 970 (11th Cir. 1997), reh'g denied 114 F.3d 1204 (11th Cir. 1997)[6] Retail Associates and Hayden are not controlling because (1) after both Retail Associates and Hayden the NLRB changed its policy (see Deklewa), (2) the Eleventh Circuit rejected the Deklewa rule, and (3) the Eighth Circuit adopted the Deklewa rule.

3. AdVin is a Fourth Circuit case. IBEW Local 26, v. AdVin Electric, Inc., 98 F.3d

---

[6]The Eleventh Circuit said "[o]ur decision is based on Eleventh Circuit precedent and not on NLRB decisions not yet adopted by this circuit." Pappas at 973. The court also said "[p]rior to Deklewa the Board interpreted § 8(f) to permit either party to terminate the bargaining agreement at will, so long as the union had not achieved majority status." Pappas at 974. (internal citations omitted).

9

161 (4th Cir. 1996). AdVin relies upon Hayden for the proposition "there should be no 'barriers to withdrawal prior to bargaining.'" AdVin at 165 citing N.L.R.B. v. Hayden Electric, Inc., 693 F.2d 1358 (11th Cir. 1982). The Fourth Circuit, like the Eleventh Circuit, has rejected Deklewa. Industrial TurnAround Corp. v. N.L.R.B., 115 F.3d 248, 254 (4th Cir. 1997).

4.    Haas was decided by the First Circuit which has adopted Deklewa. Haas Electric, Inc. v. N.L.R.B., 299 F.3d 23 (1st Cir. 2002). The distinguishing feature about Haas is the successor contract was the quid pro quo which brought the union to the bargaining table in the first place. NECA wished to secure concessions from the union under the existing collective bargaining agreement. The price for the union's agreement to begin negotiations was to extend the current contract. A deeply divided court said Haas did not need to pay the price in order to enjoy the negotiated concessions under the existing labor contract. Haas was entitled to receive the benefits negotiated under the existing labor contract without being bound to the successor labor contract.

**5 and 6.** D & R was decided by the NLRB before Deklewa. Electric Workers IBEW Local 952 (D & R Elec.), 275 NLRB 319 (N.L.R.B. 1985). D & R was discussed by the Eighth Circuit in Action Electric. Action Electric, Inc.v. Local 292 IBEW, 856 F.2d 1062 (8th Cir. 1988). Recall that Action Electric did not mention Deklewa and was decided before Miller. N.L.R.B. v. W.L. Miller Co., 871 F.2d 745 (8th Cir. 1989). The Eighth Circuit in Action Electric relied upon D & R (referring to it as Local 952). Action Electric at 1067. D & R was decided by the NLRB under the rules established in 1958 by Retail Associates. Those rules were changed when the NLRB adopted Deklewa.

The decision today follows Deklewa, Industrial TurnAround, and Miller I, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. N.L.R.B. (Deklewa), 843 F.2d 770 (3rd Cir. 1988), cert. den. 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988); N.L.R.B. v. Industrial

TurnAround Corp., 321 NLRB 181 (N.L.R.B. 1996), review denied in part, enforcement denied in part, 115 F.3d 248 (4th Cir. 1997); and N.L.R.B. v. W.L. Miller Co., 871 F.2d 745 (8th Cir. 1989).[7]

## CONCLUSION

NECA was empowered to negotiate for GF until May 31, 2004. The agreement with Local 426 was reached for the successor collective bargaining agreement before then, as evidenced by the memorandum of understanding effective February 2, 2004. GF is bound to the obligations negotiated by NECA during the time NECA was the authorized bargaining agent for GF. There is no manifest error of law to justify altering or amending the judgment under Rule 59(e). There is no mistake of fact or law to justify correction under Rule 60(b)(1). GF does not argue it has been denied a full and fair opportunity to litigate its claim, so justification for granting relief under (b)(6) is absent. Accordingly, Plaintiff's Motion to Alter or Amend Judgment (Doc. 38) is DENIED.

Dated this 17th day of February, 2006.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk
By_Shelly Margulie_, Deputy

---

[7] Although issues which arose through the Miller case were not enforced by the Eighth Circuit, the Deklewa rule remains good law as explained above.

11